The Honorable David G. Estudillo

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

Plaintiff,

v.

BRIAN TILLMAN,

Defendant.

NO. CR23-5197DGE

**GOVERNMENT'S
SUPPLEMENTAL BRIEF**

No new evidence was presented at the motions hearing that had not been previously reviewed by the Court. First, Mr. Tillman's search and weapon discovery was captured and retained on video. Any remaining video was overwritten in thirty days, consistent with Social Security Administration policy. Second, the weapon and its case were confiscated because they were prohibited items in the Social Security Administration. Mr. Tillman's backpack was returned to him because it was a personal item, consistent with Social Security Administration policy. Finally, PSO Baynes testified consistent with his prior interview that Mr. Tillman's aunt was angry and used a loud voice when she made the statement, "Why the hell did you bring that in here?" Officers retained the items of evidentiary significance, followed their procedures, and there is no evidence that the backpack or video was exculpatory or that the government acted in bad faith.

Government's Supplemental Brief - 1
*United States v. Tillman,* CR23-5197DGE

## I.    INTRODUCTION

The defense has put forward no evidence beyond mere speculation that the backpack's contents or the remaining video possesses any exculpatory value at all. The law states that the Government shall not be responsible for preserving and retaining "all material that might be of conceivable evidentiary significance." *See Arizona v. Youngblood*, 488 U.S. 51, 58 (1988) (stating that the government does *not* have such a duty). The Court should reject defendant Tillman's attempt to change established law and, as binding Supreme Court and circuit precedent requires, deny the defendant's motion. The defense has failed to demonstrate that the unpreserved video footage at issue in his motion is exculpatory, that its exculpatory value was apparent at the time the footage was destroyed, or that the government acted in bad faith. *California v. Trombetta*, 467 U.S. 479, 489 (1984).

All three are required to make out a due process claim in this context.

### A.    The Video

The Government asked Officer Emmitt McRae, "Why didn't you get additional video from the exterior of the Social Security Administration building?" He responded, "Because it wasn't relevant to the incident at hand. The incident happened at the entry control point for possession of a weapon. It shows the point of where Mr. Tillman walked into the office and submitted his backpack for inspection."  Transcript, p. 51. Officer McRae further stated the crime did not occur outside the building, or in the hallway, negating any need for video. The video does not record audio; there would be no way to capture the conversations or interactions between Mr. Tillman and the officers before or after the crime occurred.

### B.    The Backpack

The Government asked Officer Emmitt McRae, "Were you aware of any evidence or any information that backpack might not have belonged to Mr. Tillman?" Officer McRae said "No." Transcript, p. 54. Former Protective Security Officer George Baynes

Government's Supplemental Brief - 2
*United States v. Tillman,* CR23-5197DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
253- 428-3800

stated, "Company policy is we don't hold anything for anyone for any reason, aside from illicit items. The firearm and case would obviously be held because you can't bring a firearm in a federal facility. Seeing the backpack is filled with documents is not an illicit item. He left with them. We don't hold anything." Transcript, p.104. Consistent with policy, the backpack was returned as a personal item and not retained.

**C.      Argument**

The agents were not on notice of Tillman's defense. The agents did not omit exculpatory material from reports or engage in other misconduct. The agents did attempt to recover relevant evidence—from the backpack and the video. Mr. Tillman never stated that the backpack was not his, he never said the gun was not his. Neither female in his party ever claimed ownership over the weapon or asked any questions about it. Former Protective Security Officer George Baynes witnessed Mr. Tillman wearing the backpack into the building and hand-carry the backpack out of the building.

There is no evidence of negligence. The Government, through an experienced investigator, acted intentionally in obtaining evidence, collecting the relevant pieces of evidence, and retaining that evidence. The officers' actions were consistent with policy, and their preservation of evidence resulted in a video of the crime, the weapon and its case, and interviews with the individuals involved. The Defense is reaching for any and all evidence that is "potentially useful." *United States v. Hendrix*, No. CR19-0024JLR, 2019 WL 6879605, at *3 (W.D. Wash. Dec. 17, 2019) (Robart, J.) ("Mere speculation regarding the exculpatory value of evidence is not sufficient to establish that the evidence is exculpatory."). The law does not require any and all evidence collection.

Moreover, Defendant has failed to show that he was unable to obtain comparable evidence by other reasonably available means. They have detailed witness reports and a video covering the time at the SSA. Officer McRae testified as to their time outside the SSA. They have follow up reports, photos, and nexus information. There is nothing preventing Defense from accessing additional witnesses in this case, or getting the

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
253- 428-3800

statement from the second female in their group, an eye witness to the events. The defense has a witness statement that Tillman left with the backpack in his possession. We have no testimony that the folio in the backpack belonged to the aunt. We have no testimony that she was seen accessing the backpack, or directing Mr. Tillman to bring her the backpack. All of the Defense's arguments are speculative, at best. And there is no indication or allegation that Defense is unable to obtain the evidence otherwise.

**D.      Excited Utterance and Present Sense Impression**

Mr. Tillman's aunt exclaimed, "Why the hell would you bring that in here," after security officers discovered the gun at the Social Security Administration screening check point. The government expects to offer this as an excited utterance, or a present sense impression. She was seated in a special waiting area and was so loud that Former PSO Baynes heard her across the room. Ten to twenty minutes had passed since the discovery of the weapon, and her words and tone indicated she was still upset by the incident. The Tillman party was still in the SSA, and the ticket had not yet been issued. She was clearly still "under the stress of excitement caused by the event." Fed.R.Evid. 803(2).

Rule 803(2) does not deviate from the common law concept of an excited utterance. "The admissibility of such an exclamation is based on our experience that, under certain external circumstances of physical or mental shock, a stress of nervous excitement may be produced in a spectator which stills the reflective faculties and removes their control, so that the utterance which then occurs is ... spontaneous and sincere...." Wigmore, Evidence § 1745, at 202 (Chadbourn rev.1976). at 193 (quoting *Keefe v. State*, 50 Ariz. 293, 72 P.2d 425, 427 (1937)); *United States v. Alarcon-Simi*, 300 F.3d 1172, 1174 (9th Cir. 2002).

A present-sense impression is a declarant's statement describing a condition or event, made while or immediately after the declarant observed it. Fed. R. Evid. 803(1). The statements here were within the witnesses' personal knowledge, "nearly

contemporaneous with the incident described[,]" and "made with little chance for reflection." *Bemis v. Edwards*, 45 F.3d 1369, 1372 (9th Cir. 1995). Tillman's aunt's statement was made at the scene of the weapon discovery while the investigation was still ongoing.

The fact that the statements were present-sense impressions is significant because present-sense impressions have traditionally been exempted from the hearsay exclusionary rule and the Sixth Amendment right to confrontation articulated in *Crawford* v. *Washington*, 541 U.S. 36 (2004), because they are non-testimonial and inherently reliable. *See Davis* v. *Washington*, 547 U.S. 813, 828 (2006) (concluding that 911 call was nontestimonial). In a court proceeding governed by the Federal Rules of Evidence, testimony about a declarant's present-sense impression is admissible "regardless of whether the declarant is available as a witness." Fed. R. Evid. 803(1).

Her statement is corroborated by Tillman carrying his backpack with the weapon inside, his lack of reaction to the weapon's discovery, and his lack of protest in response to her comment. Tillman's statement on the CVB ticket, "Thank you" at the time the officer issued the ticket. Corroboration by other evidence makes a statement more reliable, and the Ninth Circuit Court has made clear that reliability is highly relevant. *United States v. Martin*, 984 F.2d at 312 (9th Cir. 1993).

## II.    CONCLUSION

The government is filing this supplemental brief without knowledge of what the defense intends to argue in their supplemental brief. If the Defense raises new arguments regarding their perception of the testimony from the motions hearing, the Government requests to file a reply brief.

TESSA M. GORMAN
Acting United States Attorney

*s/Hillary Stuart*
HILLARY STUART
ELYNE VAUGHT
Assistant United States Attorneys

Government's Supplemental Brief - 5
*United States v. Tillman,* CR23-5197DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
253- 428-3800